UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Francisco J. MARTINEZ,<br><br>                      Petitioner,<br><br>v.<br><br>Adolfo GONZALEZ,<br><br>                      Respondent. | Case No.: 17-cv-1760-WQH-AGS<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

HAYES, Judge:

The matter before the Court is the Petition for Writ of Habeas Corpus filed by Petitioner Francisco J. Martinez. (ECF Nos. 1–2, 4).

**I.    PROCEDURAL BACKGROUND**

Petitioner, now on probation, challenges his state court conviction on the grounds that there was insufficient evidence to convict, that an erroneous jury instruction deprived him of due process, and that the trial court erred when it refused to hear his new trial motion on thirteenth juror grounds. (ECF No. 1 at 6–8).

A California jury found Petitioner guilty of two counts of commodities fraud, based on misrepresentations Petitioner made while participating in a forex trading scheme. (ECF No. 1-2 at 8–9). The trial judge granted a new trial on both counts based on insufficient evidence, which the state appealed. *Id*. at 14–15.

On March 7, 2014, the California Court of Appeal reversed and remanded the case to a different sentencing judge with instructions to reinstate the jury verdicts and impose a sentence. *Id*. at 15.

On remand, Petitioner requested that the sentencing judge grant a new trial, on grounds not decided by the trial judge, and the sentencing judge refused to consider the motion. *Id.* at 3. The sentencing judge sentenced Petitioner to one year in custody and five years of probation. *Id*. at 15. Petitioner appealed his conviction on grounds of insufficient evidence at trial, prejudicial error by the trial judge regarding a jury instruction, and error by the sentencing judge in refusing to consider his new trial motion.

On March 9, 2017, the California Court of Appeal affirmed the conviction on direct review. (ECF No. 1-3).

On June 28, 2017, the California Supreme Court denied Petitioner's petition for review without comment. (ECF No. 1-4 at 2). Petitioner did not file any state habeas corpus petitions. Petitioner served one year in custody and is now serving his five-year probation term. (ECF No. 1 at 1–2).

On August 31, 2017, Petitioner filed the Petition. (ECF No. 1).[1]

On March 5, 2018, Respondent filed an Answer and lodged the state court record. (ECF Nos. 9–10).

On May 10, 2018, Petitioner filed a Traverse. (ECF No. 13).

**II.     FACTUAL BACKGROUND**

The following summary comes from the appellate court opinion affirming Petitioner's conviction on direct review. *See Sumner v. Mata*, 449 U.S. 539, 547 (1981) (stating that state court findings of fact are presumed correct in federal habeas

---

[1] On September 1, 2017, Petitioner filed an amended petition with his signature. (ECF No. 2). On October 23, 2017, Petitioner filed a memorandum of points and authorities to support the amended petition. (ECF No. 4). ECF Nos. 2 and 4 are identical to ECF No. 1 except for the signature, the separate filings for the petition and supporting memorandum, the order of the petition form's third page, *compare* ECF No. 1 at 3 *with* ECF No. 2 at 4, and a certificate of service, *see* ECF No. 4 at 44. For ease of reference, this Order uses ECF No. 1 and its attachments.

2

proceedings); *see also* 28 U.S.C. § 2254(e)(1) ("The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."); *Parke v. Raley*, 506 U.S. 20, 35 (1992) (holding that findings of historical fact, including inferences properly drawn from those facts, are entitled to statutory presumption of correctness).

In early 2004, Petitioner and Daniel Romero became interested in off-exchange foreign currency trading (forex). (ECF No. 1-3 at 6). Petitioner and Romero "had no background in trading or foreign currency," and contacted former stockbroker Marcellus Lee. *Id*. Petitioner and Romero received over $600,000 in loans and started forex trading through their company Kingdom Advisors. *Id*. Kingdom Advisors had favorable returns for three to five months using Lee as a trader. *Id*. After the first few months, Kingdom Advisors incurred substantial trading losses. *Id*. at 6–7. "Based solely on Lee's short-lived success, Lee, Romero, and [Petitioner] solicited several million dollars from other persons for the purpose of trading forex contracts." *Id*. at 7. Most of those investments were solicited from financial advisor Brian Smith and his clients. *See id*. at 8–10.

Lee, Romero, and Petitioner were charged with conspiracy to defraud, commodities fraud, and grand theft. *Id*. "The People alleged defendants falsely claimed substantial expertise and success trading foreign currency, promised returns of 10 to 15 percent per month on investment funds and guaranteed investors they would not lose more than 20 percent of the initial value of their portfolio through the use of stop-loss mechanisms." *Id*. at 7–8. The People also alleged that "defendants took more than 2.4 million dollars from individual victims, who lost most or all of their investments." *Id*.

A jury found Petitioner guilty of two counts of commodities fraud under California Corporations Code § 29536, corresponding to charged counts nine and eleven. *Id*. at 3, 14.

### III. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides that a state prisoner is not entitled to federal habeas relief on a claim the state court has adjudicated on the merits, unless that ruling:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63, 70–71 (2003). These provisions "create an independent, high standard to be met before a federal court may issue a writ of habeas corpus to set aside state-court rulings." *Uttecht v. Brown*, 551 U.S. 1, 10 (2007). In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was "objectively unreasonable." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004).

If there is no reasoned decision from the state's highest court, the federal court "looks through" to the underlying appellate court decision and presumes it provides the basis for the higher court's denial of a claim or claims. *Ylst v. Nunnemaker*, 501 U.S. 797, 803–06 (1991); *see also Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) ("[T]he federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale . . . [and] presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds . . . that were briefed or argued to the state supreme court or obvious in the record it reviewed.").

In this case, the Court "looks through" to the opinion of the California Court of Appeal for the basis of the California Supreme Court's denial of Petitioner's claim. (ECF No. 1-3).

IV. **DISCUSSION**

   A. **Sufficiency of the Evidence**

Petitioner contends that the Court cannot presume the correctness of the statement of facts by the California Court of Appeal because it is "replete with errors and omissions."

4

(ECF No. 1-2 at 11). Petitioner contends that no rational juror could have found him guilty of committing commodity fraud based on the facts set out in the record. Petitioner contends that the California Court of Appeal "unreasonably determin[ed] the facts in its opinion in light of the evidence presented in the state court." *Id.* at 30. Petitioner asserts that "the [California Court of Appeal]'s opinion state[s] . . . that Martinez told a lie when he said in late 2004 that the FOREX trading was profitable." *Id.* Petitioner asserts that the statement is inconsistent with the testimony at trial. *Id.*; *see also* ECF No. 13-1 at 4–5 ("The [California Court of Appeal] misstated the facts to show that in the late part of 2004 critical losses had been suffered. That made petitioner's statement made in that meeting in late 2004 false."). Petitioner asserts that "all the money was lost *cataclysmically*" at the end of 2005, precluding the possibility that a factfinder could reasonably conclude he lied by stating that forex was profitable in late 2004. (ECF No. 1-2 at 30). Petitioner asserts that the only evidence as to counts nine and eleven came from the testimony of Brian Smith. Petitioner asserts that the testimony showed that the early profits of Brian Smith's client, Robert Smith,[2] caused Brian Smith to bring in additional investors. Petitioner asserts that the testimony showed that Petitioner's representations did not cause Brian Smith to bring in additional investors.

Respondent contends that the California Court of Appeal reasonably determined that substantial evidence supported Petitioner's convictions. Respondent asserts that the conviction is supported by Brian Smith's testimony that Petitioner echoed and amplified statements by others regarding forex risk management. Respondent asserts that the conviction is supported by evidence showing Petitioner omitted to state material facts regarding Robert Smith's funds and investments.

---

[2] Petitioner states that "Brian and Robert Smith . . . were unrelated." (ECF No. 1-2 at 9). At trial Brian Smith testified that "[t]he first investor was a client of mine and also a friend. His name is Robert Smith. . . . I . . . have a unique relationship with Bob which is different from a typical client relationship in that we're also close personal friends." (ECF No. 10-30 at 60, 62).

5

Federal courts review state court sufficiency-of-the-evidence determinations by considering the evidence necessary to support a conviction under the federal constitution as set forth in *Jackson v. Virginia*. *See Johnson v. Montgomery*, 899 F.3d 1052, 1056 (9th Cir. 2018) (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)). In addition, federal courts apply a "second level of deference" when reviewing state court sufficiency-of-the-evidence determinations by considering the reasonableness of the state court's conclusions of "clearly established Federal law"—that is, the *Jackson* standard—under § 2254(d)(1). *See Johnson*, 899 F.3d at 1056 (applying AEDPA deference "[i]n addition to *Jackson*'s already deferential standard"). *Jackson* provides that "a due process claim challenging the sufficiency of the evidence can only succeed when, viewing all the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Johnson*, 899 F.3d at 1056 (quotation marks omitted). The California standard for sufficiency of the evidence "provides an identical standard of review" to *Jackson* for purposes of federal habeas review. *Casey v. Martel*, 468 F. App'x 671, 673 n. 1 (9th Cir. 2012) (citing *People v. Johnson*, 606 P.2d 738 (Cal. 1980)) ("It makes no difference that the state court did not expressly refer to *Jackson*."). "Although our sufficiency of the evidence review is grounded in the Fourteenth Amendment, we undertake the inquiry with reference to the elements of the criminal offense as set forth by state law." *Juan H. v. Allen*, 408 F.3d 1262, 1275 (9th Cir. 2005).

Under §2254(d)(1), a federal court granting a habeas petition for a sufficiency-of-the-evidence claim "must conclude that the state court's determination that a rational jury could have found each required element proven beyond a reasonable doubt was not just wrong but was objectively unreasonable." *Johnson*, 899 F.3d at 1056–57; *see also Juan H.*, 408 F.3d at 1275 ("[W]e must ask whether the decision of the California Court of Appeal reflected an 'unreasonable application of' *Jackson* . . . to the facts of this case.") (citing 28 U.S.C. § 2254(d)(1)). A federal habeas court reviewing state court sufficiency-of-the-evidence conclusions need not apply the § 2254(d)(2) standard regarding

unreasonable factual determinations. *See Sarausad v. Porter*, 479 F.3d 671, 678 (9th Cir. 2007) ("A court under *Jackson* makes no 'determination of the facts' in the ordinary sense of resolving factual disputes. . . . We therefore evaluate a state court's resolution of a *Jackson* sufficiency-of-the-evidence claim in all cases under § 2254(d)(1) rather than § 2254(d)(2), as we have already held in *Juan H.*"), *rev'd on other grounds sub nom. Waddington v. Sarausad*, 555 U.S. 179 (2009). *See also Flores v. Beard*, 533 F. App'x 730, 731 n.1 (9th Cir. 2013) ("Because we 'evaluate a state court's resolution of a Jackson sufficiency-of-the-evidence claim in all cases under § 2254(d)(1) rather than § 2254(d)(2),' we do not address [petitioner]'s § 2254(d)(2) argument.").

In this case, Petitioner was charged with violating Cal. Corp. Code § 29536, which provides that it is unlawful to "willfully make . . . any untrue statement of a material fact, or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading" in connection with "the purchase or sale of . . . a commodity . . . ." At trial, Petitioner testified that he contacted investors to promote forex trading during the initial stages of Kingdom Advisors. (ECF No. 10-36 at 30). Petitioner testified that he informed others he was not experienced in forex trading. *Id.* at 32. Petitioner testified that Jeffrey Bender was the first investor he personally approached and that in early 2004 Bender invested between $550,000 and $650,000. *Id.* at 31; *see also* ECF No. 10-37 at 42. Petitioner testified that shortly after Bender's initial investment, George Chernish invested between $200,000 and $250,000. *See* ECF No. 10-36 at 35–37, 105. Petitioner testified that he informed Bender and Chernish that the trading was a complete failure and their money was gone after only a few months. *Id.* at 44. Petitioner testified that Bender and Chernish were the only investors involved in forex trading with Kingdom Advisors at the time of their losses. *Id.* at 43–44.

Petitioner testified that he did not recall when Brian Smith "came to the scene," and also testified that "I don't believe [Brian Smith] invested anything at the time" when Bender's and Chernish's accounts were still profitable. (ECF No. 10-37 at 45). In regard to Bender's and Chernish's losses, Petitioner was asked "[a]nd at that point in time, was

7

new money from investors still coming into the business?" *Id*. at 127. Petitioner responded, "I don't know, since the only people I spoke to—or, let's say, pitched to—was Bender and Mr. Chernish." *Id*. When Petitioner was asked "[h]ow many more loans came into Kingdom Advisors *after* that point in time?" he responded, "I know that the only one I can recall *after* that would be Mr. Smith, Brian Smith." *Id*. at 188 (emphasis added).

Brian Smith testified that in late in 2004, Petitioner and Romero met with him to discuss forex trading with Kingdom Advisors. (ECF No. 10-31 at 23). Brian Smith testified that during their meeting, Petitioner said "there was profitability in their venture; they could provide seven percent a month return with a lot of safety on principal." *Id*. at 24. Brian Smith testified that Romero did "the most talking with respect to Kingdom Advisors," and that Petitioner would "amplify" and "echo" what others said. *Id*. Brian Smith testified that in November 2014, his client Robert Smith made an initial investment of $100,000. (ECF No. 10-30 at 140).

The California Court of Appeal specifically addressed evidence regarding willful untrue statements of material fact and omissions by Petitioner, and investor reliance. The California Court of Appeal referred to evidence in the record regarding Petitioner's role in online statements that defendants' forex trading program was able to mitigate risk through stop-loss mechanisms. The California Court of Appeal referred to Petitioner's statements to Brian Smith during the late 2004 meeting with Romero, after other investors had incurred losses. The California Court of Appeal relied on Brian Smith's testimony that he knew the investment was risky and that he was reassured by the defendants' descriptions of risk management. The California Court of Appeal invoked the California standard for sufficiency of the evidence from *People v. Johnson* and determined that "[t]he record contains substantial evidence to support the jury's conclusion that Martinez was guilty of commodities fraud" in violation of Cal. Corp. Code § 29536. (ECF No. 1-3 at 24).

The Court concludes that the record viewed "in the light most favorable to the prosecution" does not support a finding that "no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See Johnson*, 899 F.3d at

8

1056. The conclusion by the California Court of Appeal that the jury's verdict was supported by sufficient evidence was not "wrong" or "objectively unreasonable." *See Johnson*, 899 F.3d at 1057. To the extent Petitioner challenges factual determinations by the California Court of Appeal under § 2254(d)(2) or § 2254(e)(1), the challenge amounts to a disagreement over what inferences the jury could reasonably have drawn from the evidence. Courts evaluate such disagreements using § 2254(d)(1). *See Mendez v. Davey*, No. EDCV152496PSGJEM, 2017 WL 4277131, at *11 (Aug. 18, 2017), *adopted by* 2017 WL 4279212 (C.D. Cal. Sept. 22, 2017), *certificate of appealability denied*, No. 17-56538, 2018 WL 4943761 (9th Cir. 2018); *see also Murray v. Schriro*, 745 F.3d 984, 999 (9th Cir. 2014) (stating that § 2254(d)(2) and § 2254(e)(1) "govern factual challenges to a state-court conviction on collateral review," and that "[t]here is some confusion, however, in our cases over the interaction between these two provisions").

### B. Harmlessness of Jury Instruction

Petitioner contends that the California Court of Appeal incorrectly determined it was harmless error when the trial judge failed to instruct the jury that conviction required proof the alleged misrepresentations were made "knowingly." (ECF No. 1-2 at 34). Petitioner asserts that the evidence did not show that Petitioner lied or that Brian Smith relied on Petitioner's statements. Petitioner further asserts that the instructions permitted the jury to find him strictly liable. Petitioner further asserts that the California Court of Appeal ignored the trial court's favorable determination of Petitioner's creditability and ignored Brian Smith's testimony. Petitioner contends that the error was not harmless under *Brecht* because Petitioner's lawyer was left "with no jury instruction from the judge to back up his argument to the jury that . . . Martinez was not involved in the negotiations at all." (ECF No. 1-2 at 38).

Respondent contends that the California Court of Appeal reasonably determined that any trial court error was harmless beyond a reasonable doubt. Respondent asserts the determination was reasonable because the jury received a "willfully" instruction, no party argued it was a strict liability offense, and there was overwhelming evidence that Petitioner

9

knew of significant losses when he made statements that forex was profitable. (ECF No. 9-1 at 18).

"The test for whether a federal constitutional error was harmless . . . [o]n direct appeal . . . is the one prescribed in *Chapman*." *Davis v. Ayala*, 135 S. Ct. 2187, 2197 (2015) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967) ("[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."). "In a collateral proceeding . . . habeas petitioners are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice'" as set forth in *Brecht v. Abrahamson*. *Id.* at 2197 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). The *Brecht* standard provides that "relief is proper only if the federal court has 'grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict.' . . . There must be more than a 'reasonable possibility' that the error was harmful." *Id.* at 2197–98 (first quoting *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995), then quoting *Brecht*, 507 U.S. at 637) (internal quotation marks omitted). However, when the state court has evaluated whether "any federal error was harmless beyond a reasonable doubt under *Chapman*," the AEDPA standard applies:

> [A] federal habeas court cannot grant [petitioner] relief unless the state court's [decision] (1) was contrary to or involved an unreasonable application of clearly established federal law, or (2) was based on an unreasonable determination of the facts. Because the highly deferential AEDPA standard applies, we may not overturn the . . . decision unless that court applied *Chapman* "in an objectively unreasonable manner." . . . When a *Chapman* decision is reviewed under AEDPA, "a federal court may not award habeas relief under § 2254 unless the *harmlessness determination itself* was unreasonable." . . . And a state-court decision is not unreasonable if "fairminded jurists could disagree on [its] correctness." [Petitioner] therefore must show that the state court's decision to reject his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."

*Id.* at 2198–99 (first quoting *Mitchell v. Esparza*, 540 U.S. 12, 18 (2003), then quoting *Fry v. Pliler*, 551 U.S. 112, 119 (2007), and then quoting *Harrington v. Richter*, 562 U.S. 86, 101, 103 (2011)). "In sum, a prisoner who seeks federal habeas corpus relief petitioner must satisfy *Brecht*, and if the state court adjudicated his claim on the merits, the *Brecht* test subsumes the limitations imposed by AEDPA." *Id.* at 2199.

In this case, the trial judge instructed the jury as follows:

> The defendants are charged with fraud in offer or sale of commodity in violation of Corporations Code Section 29536. To prove that a defendant is guilty of this crime, the People must prove that, one, the defendant, directly or indirectly, in connection with the purchase or sale of, the offer to sell, the offer to purchase, the offer to enter into, or the entry into a commodity, commodity contract, or commodity option; and two, willfully made any false report, entered any false record, made any untrue statement of a material fact, or omitted to -- or omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

(ECF No. 10-38 at 27). The California Court of Appeal determined that the trial court erred by failing to sua sponte give an instruction for "knowingly" scienter. The California Court of Appeal determined that the error was harmless beyond a reasonable doubt as follows:

> After reviewing the record, we conclude the failure to instruct the jury about knowledge of the falsity of the statement is harmless beyond a reasonable doubt. (*Chapman*, *supra*, 386 U.S. at p. 24.) The trial court instructed the jury that to find the defendants guilty of commodities fraud, it must find that the defendants *willfully* made a false report, false record, an untrue statement of a material fact, or omitted to correct a misleading statement. Willfully means that the action was deliberate and implies knowledge. (*Honig*, *supra*, 48 Cal.App.4th at p. 334; *People v. Loeper*, *supra*, 167 Cal.App.2d at p. 33.) The prosecution repeatedly told the jury [that] to convict the defendants of commodities fraud, it had to find they had lied to their clients. In this context, the common meaning of "to lie" is "to make an untrue statement with intent to deceive." (Merriam-Webster's Coll. Dict. (11th ed. 2006) at p. 717, col. 2.) Trial counsel for Romero and Petitioner also told the jury that lying was the key to their clients' guilt or innocence. The record shows beyond a

> reasonable doubt that Romero, Petitioner and Lee knowingly made false reports, and omitted to correct misleading statements, to their victims.

(ECF No. 1-3 at 32) (first citing *Chapman*, 386 U.S. at 24, then citing *People v. Honig*, 55 Cal. Rptr. 2d 555, 581 (Ct. App. 1996), and then citing *People v. Loeper*, 334 P.2d 93, 95 (Cal. Ct. App. 1959)). The California Court of Appeal reviewed the evidence in the record and did not identify any statements by the prosecution or defense suggesting that strict liability applied or that a mistaken-but-honestly-believed statement would suffice for a conviction. *See, e.g.*, ECF No. 1-3 at 32; ECF No. 10-38 at 62 (prosecutor discussing statement made "without basis" and the evidence that defendants "duped" the victims "on purpose"); ECF No. 10-38 at 88 (Lee's counsel defining commodities fraud as "lying to somebody with the hope they will rely"); ECF No. 10-39 at 16–17 (Petitioner's counsel rebutting the State's case by pointing to Petitioner's "character for honesty and truthfulness"). The California Court of Appeal reviewed the instruction to the jury that any false statement or material omission had to be made "willfully" and compared the meanings of willfully and knowingly with reference to the evidence in this case. *See* ECF No. 1-3 at 32–35; *see also* ECF No. 10-38 at 27–28. The California Court of Appeal identified testimony showing that losses began "three to four months" after the forex trading began in early 2004, and that Petitioner was aware of such losses before participating in pitches to other investors in late 2004. (ECF No. 1-3 at 33).

The Court concludes that the record does not support a finding that the *Chapman* harmlessness determination by the California Court of Appeal was unreasonable, that is, "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *See Davis*, 135 S. Ct. at 2198–99. Assuming an error of federal law occurred, the record does not support a finding of actual prejudice, that is, "grave doubt" that the erroneous instruction "had substantial and injurious effect or influence in determining the jury's verdict." *Id.* Petitioner is not entitled to habeas relief regarding the harmless error determination and the scienter of the jury instruction.

### C. Thirteenth Juror New Trial Grounds

Petitioner contends that the sentencing judge's refusal to consider his new trial motion arbitrarily deprived him of a Fourteenth Amendment liberty interest. Petitioner asserts that California law entitled him to a determination of the thirteenth juror grounds that he raised but the trial judge did not reach when granting his new trial motion. (ECF No. 13-1 at 12) (citing *Hicks v. Oklahoma*, 447 U.S. 343 (1980)). Petitioner asserts that the sentencing judge's refusal was analogous to an error reversed by the California Court of Appeal in *People v. Beltran*, a case not referenced by the California Court of Appeal in this case. *See* ECF No. 1-2 at 41–42 (citing *People v. Beltran*, 210 P.2d 238 (Cal. Ct. App. 1949)).

Respondent contends that Petitioner's thirteenth juror claim is not cognizable for purposes of federal habeas corpus because a trial judge's assessment of evidence as a thirteenth juror is a question of state law. Respondent further asserts that Petitioner failed to challenge the limited scope of the remand order to the sentencing judge in the first petition for review by the California Supreme Court. (ECF No. 9-1 at 21, 26).

"Whether a state trial judge in a jury trial may assess evidence as a '13th juror' is a question of state law." *Hudson v. Louisiana*, 450 U.S. 40, 44 n.5 (1981). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). "A state court's procedural or evidentiary ruling is not subject to federal habeas review unless the ruling violates federal law, either by infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process." *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995). A habeas petitioner is not entitled to relief based "on [an] erroneous conclusion that he was denied a right guaranteed to him by state law." *Gonzalez*, 667 F.3d at 995; *see also Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996)

(holding that a petitioner may not "transform a state-law issue into federal one merely by asserting a violation of due process").

"*Hicks v. Oklahoma* . . . held that if a state guaranteed a defendant the right to have a jury decide his sentence, it was unconstitutional to deny him resentencing by a jury after the statute under which he was sentenced was deemed unconstitutional." *Gonzalez v. Wong*, 667 F.3d 965, 995 (9th Cir. 2011). Federal courts in California have concluded that failure to follow state law in adjudicating a motion for new trial does not violate due process as set forth in *Hicks*. *See, e.g.*, *Borges v. Davey*, 656 F. App'x 303, 304 (9th Cir. 2016) ("Borges's contention that the trial court misapplied state law in denying his motion for a new trial is not cognizable on federal habeas review."); *McNally v. Frauenheim*, No. CV 16-8572-CJC (KS), 2018 WL 4006330, at *7 (C.D. Cal. June 25, 2018) ("Petitioner has not alleged a cognizable federal claim based on the denial of his motion for new trial merely by citing *Hicks* or by asserting a 'state-created liberty interest.'"); *Alphonso v. Frauenheim*, No. 14cv0884-L (JMA), 2015 WL 13738297, at *10 (Aug. 8, 2015) ("[T]he right that Petitioner seeks to enforce, his state statutory right to a new trial, emanates from state law. Consequently, his claim is not cognizable on federal habeas review."), *adopted by* 2016 WL 3621075 (S.D. Cal. July 5, 2016), *aff'd* 2018 WL 2275278 (9th Cir. 2018); *Long v. Lattimore*, No. EDCV10-277-PSGSP, 2012 WL 1400898, at *11 (Mar. 16, 2012) (applying incorrect "substantial evidence" standard instead of thirteenth juror standard when denying new trial motion implicated only state criminal procedure, and was not "arbitrary or capricious" under due process; noting state appellate court's determination that the trial court "understood its obligation" despite the error), *adopted by* 2012 WL 1401779 (C.D. Cal. Apr. 19, 2012), *aff'd sub nom. Long v. Johnson*, 736 F.3d 891 (9th Cir. 2013).

In this case, the California Court of Appeal stated that "in view of this court's remittitur, the sentencing court did not err in denying to hear the motion for new trial." (ECF No. 1-3 at 43). Petitioner references the Fourteenth Amendment, *Hicks*, and no other federal authority. The Court concludes that the sentencing judge's refusal to consider

14

Petitioner's new trial motion on thirteenth juror grounds did not "infring[es] upon a specific federal constitutional or statutory provision" or deprive Petitioner "of the fundamentally fair trial guaranteed by due process." *See Walters*, 45 F.3d at 1357. Petitioner's claim based on the thirteenth juror grounds of his new trial motion is not cognizable on federal habeas review. *See Borges*, 656 F. App'x at 304.

### D. Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases states that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability should issue as to those claims on which a Petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). The Court concludes that Petitioner has raised nonfrivolous claims debatable among reasonable jurists. The Court grants a certificate of appealability with respect to Petitioner's claims based on the conclusions of the California Court of Appeal regarding sufficiency of the evidence and harmless error.

### V. CONCLUSION

IT IS HEREBY ORDERED that Petitioner's habeas petition is denied. The Court grants a certificate of appealability with respect to Petitioner's claims based on the conclusions of the California Court of Appeal regarding sufficiency of the evidence and harmless error. The Clerk is directed to close this case.

Dated: April 11, 2019

Hon. William Q. Hayes
United States District Court